**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

WAKE PLUMBING AND PIPING, INC.,

      Plaintiff,                     Case No:  2:12-cv-12734
                                        Honorable Victoria A. Roberts

v.

MCSHANE MECHANICAL CONTRACTING, INC.
AND TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA,

      Defendants.
_____/

**ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.    INTRODUCTION**

      This contract dispute arises from a construction project in Fort Bragg, N.C.  The general contractor subcontracted plumbing work to Plaintiff Wake Plumbing and Piping, Inc. ("Wake"), and HVAC work to Defendant McShane Mechanical Contracting, Inc. ("McShane").  McShane subcontracted a portion of its HVAC work to Wake.

      McShane asks the Court to dismiss Wake's claims for promissory estoppel and unjust enrichment (Counts II and III); it says there is no dispute that an express contract exists between the parties.  Wake opposes the motion.  While both parties assert the existence of an express contract, the parties disagree over the contract terms.

      The Court must first determine whether there is a contract between the parties before it can rule on promissory estoppel and unjust enrichment claims.  The Court finds that there is a genuine issue of fact concerning the existence of an express contract.  McShane's motion is **DENIED**.

## II.      BACKGROUND AND PROCEDURAL HISTORY

Suffolk Construction Company, Inc. ("Suffolk") was the general contractor for Irwin Intermediate School (the "Project").  Suffolk subcontracted plumbing work on the Project to Wake; it also subcontracted heating, ventilation, and air conditioning ("HVAC") work to McShane.  McShane then subcontracted Wake to complete two different components of the HVAC work:  a) "Underground Work" and b) "Aboveground Work."  Accordingly, Wake was to perform three separate and distinct phases of work on the Project:

1) Plumbing for Suffolk;
2) Underground Work for McShane; and,
3) Aboveground Work for McShane.

On May 3, 2011, Wake sent McShane a proposed lump sum bid of $296,000 for both Underground and Aboveground Work, including labor and materials.  Over the next few weeks, the parties negotiated terms and conditions, the scope, and the price for Aboveground Work.  Because McShane was worried about delays, Wake says McShane advised it on June 6, 2011 to perform the Aboveground Work despite the absence of drawings or materials.  Wake agreed, and over the next few weeks moved forward with piping preparations for the Aboveground Work, consistent with a May 3rd piping price quote of $267,100.

On June 17, 2011, McShane sent Wake a purchase order for the Aboveground Work, the "53 subcontract," for $267,000.  Despite the absence of an express agreement on terms and conditions, Wake performed in connection with the 53 subcontract; it assumed it would be paid consistent with this document.  Wake now says

it accepted the 53 subcontract by performance and further, that this document is part of the parties' course of dealings.

On July 5, 2011, McShane unilaterally and without notice or discussion, voided the 53 subcontract by writing "DELETED 07/05/11 per Phil." across the top. Phillip McShane testified that he had concerns about Wake's ability to perform the job; he wanted to proceed with the Aboveground Work on a time and material basis. McShane also testified that he did not know the start date for the Aboveground Work, but believed Wake's men were on site after July 14, 2011.

On July 14, 2011, McShane faxed Wake a new document, the "73 subcontract." The 73 subcontract changed the terms for the Aboveground Work to time and material, with a not—to—exceed price of $140,000. Wake objected by email to the 73 subcontract on July 18, 2011. Doc. 52-7. Wake continues to believe the 53 subcontract is one basis for its agreement with McShane. On the other hand, McShane believes the 73 subcontract supersedes the 53 subcontract and that Wake accepted and performed under the former. Doc. 50, Pg ID 564-565; *see also* Doc. 52-13 Pg ID 751 lines 20-22.

The factual issues in dispute include, but are not limited to: 1) which document – if either – created an express contract for Aboveground Work; 2) the scope of work to be completed by Wake; 3) the scope of work that was actually completed; 4) the start date for Aboveground Work; and, 5) the price for Aboveground Work.

### III.   STANDARD OF REVIEW

Rule 56 entitles the moving party to judgment as a matter of law "if the pleadings, depositions, answer to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." *Celotex Corp. v. Catrett*,

3

477 U.S. 317, 323 (1986).  Summary judgment is appropriate where the non-moving

party, after adequate time for discovery on material matters at issue, fails to make a

showing sufficient to establish the existence of a material disputed fact.  *Id*.  The moving

party bears the initial burden to show the absence of a genuine issue of material fact.

*Id*.  Once this burden is met, the non-moving party must establish facts showing a

genuine issue for trial.  *Matsushita Elec. Indus. Co v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in

the light most favorable to the non-moving party.  *Adcock v. Firestone Tire & Rubber*

*Co.*, 822 F.2d 623, 626 (1987).  The non-moving party "may not rest upon the mere

allegations or denials" of its pleadings.  Fed. R. Civ. P. 56(e). Instead, it "must set forth

specific facts showing that there is a genuine issue for trial."  *Id*.  The existence of a

mere scintilla of evidence in support of the non-moving party's position will not suffice; it

must provide evidence on which a jury could reasonably find for the non-moving party.

*Hopson v. Daimler Chrysler Corp.*, 306 F.3d 427 (6th Cir. 2002).

## IV.    ANALYSIS

### A.  The Express Agreement

The parties agree that there was a contract for the Aboveground Work; they

disagree on its terms.

An express contract requires a meeting of the minds on all essential terms and is

an actual agreement of the parties, openly declared, either orally or in writing.  *Hall v.*

*Small*, 267 Mich. App. 330 (2005).  In order for a contract to be enforceable there must

be a valid offer, a valid acceptance, and adequate consideration.  *Turner Associates,*

*Inc. v. Small Parts, Inc.*, 59 F. Supp. 2d 674, 680 (E.D. Mich. 1999).  The parties' course of conduct dictates the terms of an express contract.  *Quality Products and Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362 (2003).  A meeting of the minds can be found from performance and acquiescence in that performance.  *DaimlerChrysler Corp. v. Wesco Distribution, Inc.*, 281 Mich. App. 240, 247 (2008).

Whether an express contract for the Aboveground Work exists is a question of fact for the jury.  The parties appear to have been negotiating contract terms for roughly a month and a half.  During that time, McShane created two potential offers: the 53 subcontract and the 73 subcontract.

The 73 subcontract is not an express contract between the parties; Wake objected to it by email on July 18.  Therefore, the 53 subcontract is the only written document that could reasonably create an express agreement.  While it is clear that neither party gave explicit verbal or written consent to the 53 subcontract, the law allows for acceptance by performance.  *DaimlerChrysler*, 281 Mich. App. 240 at 247.  There is a genuine issue of fact as to whether Wake accepted the 53 subcontract by performance; therefore, summary judgment is not appropriate.

If the 53 subcontract created an express contract, a jury will determine whether McShane accomplished rescission; jurors will consider the quality of Wake's services and whether performance caused a material breach.  In deciding whether the alleged breach is material, a jury will determine terms and conditions of the agreement, the scope of work that was supposed to be completed, and, what work was actually completed.

5

Since essential contract terms for the Aboveground Work are in dispute, the Court cannot decide whether an express contract exists.

### B. Claims for Promissory Estoppel and Unjust Enrichment

Wake claims that if the Court finds no express agreement, it is entitled to alternative relief under promissory estoppel and unjust enrichment, according to FRCP 8(a)(3); FRCP (d)(2); and, FRCP 8(d)(3).  If a jury finds that there is an express contract, Wake is only entitled to relief under that contract, and nothing beyond it. Damages would be determined based on how much work a jury believes Wake actually completed, less $35,000 already paid by McShane.

Promissory estoppel is a substitute for consideration where there are no mutual promises. *Huhtala v. Travelers Ins. Co.*, 401 Mich. 118, 133; 257 N.W.2d 640 (1977). For the court to apply promissory estoppel under Michigan law, it must find an implied agreement exists between the parties, in the absence of an express contract.  *APJ Assocs., Inc. v. N. Am. Phillips Corp.*, 317 F.3d 610, 617 (6th Cir. 2003).  Further, "to support a claim for unjust enrichment a plaintiff must demonstrate: 1) a benefit conferred by a plaintiff upon a defendant; 2) knowledge by the defendant of the benefit; and, 3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment."  *Bower v. Int'l Bus. Machines, Inc.*, 495 F. Supp. 2d 837, 844 (S.D. Ohio 2007).

If the jury finds no express contract between the parties, it will determine whether Wake conferred a benefit on McShane and whether Wake is entitled to compensation for services it has not been paid for.  Nonetheless, Wake has a right under the law to

6

plead these alternate theories for recovery.  The Court **DENIES** McShane's request to dismiss Counts II and III for promissory estoppel and unjust enrichment.

### C. Calculating Potential Damages

In the event damages cannot be calculated under an express contract, Wake believes that damages under promissory estoppel and unjust enrichment can be calculated through certified payroll records.  These records were provided to the Court as an attachment to Wake's response to McShane's motion.  They were reviewed by Eric Berlin ("Berlin"), first year attorney for Wake's counsel.  At oral hearing, McShane argued that promissory estoppel and unjust enrichment claims should be dismissed because Wake did not provide the certified payroll records until *after* discovery ended.

The Court will not dismiss claims for promissory estoppel and unjust enrichment as a matter of law.  Nonetheless, McShane is at a great disadvantage because it was not able to investigate the accuracy of these records or the methods used by Berlin to calculate damages.

"A party asserting a claim has the burden of proving its damages with reasonable certainty."  *Berrios v. Miles, Inc.*, 226 Mich. App. 470, 478, 574 N.W.2d 677, 680, 543 (1997).  However, "although damages based on speculation or conjecture are not recoverable, *Stutter v. Biggs*, 377 Mich. 80, 86 . . . damages are not speculative merely because they cannot be ascertained with mathematical precision.  *Godwin v. Ace Iron & Metal Co.*, 376 Mich. 360, 368 . . ..  It is sufficient if a reasonable basis for computation exists, although the result be only approximate."  *McCullagh v.Goodyear Tire & Rubber Co.*, 342 Mich. 244, 255; supra.

7

The certified payroll records might provide a sufficient basis to calculate damages.  McShane did not have a fair opportunity to object to Wake's calculations and propose its own figures.  The Court will allow McShane to depose Berlin and obtain any other documentation related to certified payroll records.  Wake must comply with McShane's discovery request.

## V.    CONCLUSION

McShane's Motion for Partial Summary Judgment is **DENIED**.  There are issues of fact for a jury to decide.


IT IS ORDERED.



                                             S/Victoria A. Roberts
                                             Victoria A. Roberts
                                             United States District Judge

DATED:  July 29, 2014